IN THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR MANATEE COUNTY, FLORIDA
CIVIL DIVISION

DEVELOPMENTAL TECHNOLOGIES, LLC.
a Florida limited liability company

      Plaintiff,

v.

Case No.: _____

MITSUI CHEMICALS, INC., a foreign corporation,
and MITSUI CHEMICALS AMERICA, INC.
a foreign corporation,

      Defendants.
_____/

## **COMPLAINT AND DEMAND FOR INJUNCTIVE RELIEF AND JURY TRIAL**

Plaintiff, DEVELOPMENTAL TECHNOLOGIES, LLC, a Florida limited liability company, by and through its undersigned attorneys and pursuant to the Florida Rules of Civil Procedure, hereby files its Complaint against Defendants, MITSUI CHEMICALS, INC. ("MCI"), and MITSUI CHEMICALS AMERICA, INC. ("MCA") (collectively, MCI and MCA shall be referred to as "Mitsui" or "Defendants"), and alleges, upon information and belief, as follows:

### *THE PARTIES*

1. Plaintiff, Developmental Technologies, LLC ("DTL"), is a Florida limited liability company, having its principal place of business at 6404 Manatee Avenue W., Suite N, Bradenton, Florida 34209.

2. Upon information and belief, Defendant, Mitsui Chemicals, Inc., is a Japanese corporation, operating throughout the world, including the United States, and headquartered in Tokyo, Japan.

3. Upon information and belief, Defendant, Mitsui Chemicals America, Inc., is a Delaware Corporation, having its principal place of business at 251 Little Falls Drive, Wilmington, Delaware, 19808.

### *NATURE OF THE ACTION*

4. This action arises out of Mitsui's unauthorized removal and misappropriation of DTL's proprietary, confidential, and trade secret information ("Confidential Information") associated with DTL's product, Eco-Ag. Eco-Ag is a state-of-the-art plant irrigation system.

5. Mitsui's Japanese representatives met with DTL, at DTL's Florida headquarters, regarding the Eco-Ag system. When an agreement with DTL failed to materialize, Mitsui decided to use, and did use, the Confidential Information of DTL for its own products, "iCAST™ (integrated Cultivation-Accelerating System)" and "iCALM™ (integrated Cultivation-Accelerating Materials)" (hereinafter, referred to as the "Mitsui Products").

6. Before any visit to the DTL worksite by Mitsui, where the Confidential Information was disclosed, or any other disclosure of Confidential Information associated with DTL's Eco-Ag system, both MCA and MCI signed a Non-Disclosure and Non-Use Agreement, attached hereto as Exhibit "A" and incorporated herein (the "NDA").

7. The Mitsui Products were developed by misappropriating DTL's Confidential Information, disclosed to Mitsui during its visits to the DTL worksite and related contacts with DTL, all of which were covered by the NDA. DTL's plant responsive irrigation system interacts directly with plants to deliver water and nutrients "on-demand", in precise amounts designed to meet the plants' needs without waste. DTL's irrigation system has numerous components and processes that comprise the technology and all contribute to the plant responsive nature of the invention and its efficiency in water and fertilizer conservation. The Confidential Information specifically relates to DTL's confidential, proprietary, and trade secret information involving, in particular:

    (a) Identified specific component materials and their specifications, characteristics and properties;

(b) Recommended operating procedures of the Eco-Ag system;

(c) Identified components, materials and methods to adjust and optimize water flow, functionality and performance of the system and associated technology;

(d) Installation details of the Eco-Ag system and system components, including design, product configuration and layouts for different applications;

(e) Extensive tests with data and scientific analysis, establishing, without limitation: patterns of plant growth when using the Eco Ag system; material properties and variations therein based on *in situ* use and the introduction of surfactants and other chemicals; best operating protocols and methods to regulate water flow, fertilizer types and their delivery, and impacts on plant germination, development, and yield; the effects of environmental conditions and variable operating pressures on system functionality; best practices and operating parameters and performance of various microporous materials while in use with the Eco-Ag system and changes in their properties and hydrophilicity based on variations in system pressure, length of delivery line, soil type or growing media, agrochemical instillations, combinations of in-line additives, fertilizers, surfactants, root exudates, particulates, water quality, and UV;

(f) Proprietary information regarding DTL's sales volumes, revenue, profit, market data, regional breakdowns, and market share/growth.

(g) Manufacturing methods and costs. Identification of alternative nonwoven substrate materials for manufacturing DTL's responsive irrigation delivery system, including the use of four Mitsui-manufactured materials (K3SM07A1* ref.# 1A, B, C, D) specifically tested by DTL.

(h) Presentation of all related patents in DTL's IP portfolio, including pending and then-unpublished patent applications and their descriptions.

8. Without immediate injunctive relief requiring Mitsui to cease continuing with the Mitsui Products, and enjoining Mitsui and those acting in concert with them from further accessing or using the Confidential Information, DTL will suffer irreparable harm. Conversely, Mitsui will suffer no harm as they have no lawful right to use DTL's confidential, proprietary, and trade secret information.

9. Mitsui's agreements with DTL expressly provide that no license was granted by disclosure of the Confidential Information.

10. DTL brings this action to protect its trade secrets and confidential information and to seek redress from the harm that Mitsui's wrongful conduct has caused and will cause DTL. DTL seeks an injunction and appropriate order to, as more fully described in the prayer below, enjoin Mitsui from directly or indirectly disclosing or utilizing DTL's confidential, proprietary, and/or trade secret information. Further, DTL seeks compensatory relief for the unjust enrichment that has resulted from the improper misappropriation of DTL's trade secrets and confidential information. All appropriate fines and fees should be levied against Mitsui as well.

### *JURISDICTION AND VENUE*

11. Venue is proper in Manatee County, Florida because, without limitation: this action involves a contract entered into in Manatee County, Florida, and Defendant Mitsui committed a tort in Manatee County, Florida.

12. This is an action for damages that exceed $15,000 (fifteen thousand and 00/100 dollars).

13. Jurisdiction and venue are proper in this Court.

### BACKGROUND FACTS

14. DTL is a privately held research and development company whose Eco-Ag irrigation systems deliver water and nutrients to plant life using a mix of patented and proprietary methods.

15. DTL has developed and maintained valuable relationships and substantial goodwill with its intended customers.

16. DTL's business information, including its confidential, proprietary, and trade secret information, intended customer relationships and goodwill, are of paramount significance to its business reputation and success.

17. DTL's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

18. DTL subjects its trade secrets to efforts that are reasonable under the circumstances to maintain their secrecy. These efforts include, among other things, requiring third parties to sign and abide by non-disclosure and non-use agreements.

### ENTER MITSUI

19. Starting in 2010, DTL was in contact with Mitsui with regard to DTL's irrigation system products. The main purpose of the contact was to present DTL's technology and its IP portfolio for consideration as an acquisition by Mitsui.

20. On or around August 12, 2010, Mitsui (both MCI and MCA) entered into the NDA with DTL, signed by Hirozumi Matsuno, Manager of New Business Development of MCI, and Naoto Tani, President/CEO of MCA. The NDA established guidelines for the use and disclosure of the Confidential Information that would be disclosed to Mitsui.

21. On September 14-15, 2010, after executing the NDA, Mssrs. Matsuno and Tani visited DTL's research and development site in Bradenton, Florida, and spent two days in meetings with DTL's staff and consultants, and toured and observed in-progress tests at DTL's secure greenhouse. During these meetings and at the testing facility, both Mr. Matsuno and Mr. Tani took extensive notes and photographs, including photographs of active tests and system configurations.

22. During the two-day visit, DTL disclosed Confidential Information relating to irrigation processes and the Eco-Ag system to Mitsui. Immediately following the site visit, on September 16, 2010, Mr. Matsuno called from New York to thank DTL for the "excellent" presentation and to confirm that DTL would be sending the memory sticks he and Mr. Tani requested. He requested that DTL include other Confidential Information, including financial models, the PowerPoint presentation, photos of the active tests, the irrigation company list, the global AG/irrigation marketing spreadsheets and graphs (with sources), marketing images and notes, and all other documents and data shared during the meeting.

23. All Confidential Information was created by DTL employees in the scope of their employment.

24. The Confidential Information included detailed marketing plans for U.S. and international markets, proprietary financial summaries and forecasts, profit and revenue potential, and distribution opportunities.

### *USE OF CONFIDENTIAL INFORMATION*

25. At no point did DTL authorize Mitsui to use, discuss and/or disclose the Eco-Ag product or any of the Confidential Information. The NDA forbade the use of the Confidential Information for the Defendants' benefit and forbade permitting others to use the Confidential Information for their benefit or to the detriment of DTL. For example, Paragraph 3 of the NDA states the following (PNP stands for "Potential New Purchaser"):

> Obligations of PNP. Where PNP receives Confidential Information, it will hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of DTL. PNP shall carefully restrict access to Confidential Information to employees, and agents with a "need to know" and shall obligate those individuals to whom it gives access to Confidential Information to abide by the same restrictions and covenants as imposed upon PNP herein. **PNP shall not use for PNP's own benefit**, publish, copy, or otherwise disclose to others, or permit the use by others for their benefit **or to the detriment of DTL**, any Confidential Information other than the Purpose (herein after defined). DTL discloses information of or concerning its System including but not limited to its intellectual property, for the sole and limited purpose of identifying a buyer of its Eco-Ag solution ("Purpose").
>
> PNP shall return to DTL any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information within ten (10) business days if DTL requests it in writing.
>
> **PNP hereby warrants and represents that it will not use the Confidential Information disclosed under this Agreement except for the purpose of determining PNP's interest in entering into a business transaction between the undersigned.**
> (emphasis added).

27. Currently, Mitsui is marketing two new products in the field of crop irrigation - "iCAST™ (integrated Cultivation-Accelerating System)" and "iCALM™ (integrated Cultivation-Accelerating Materials)" (hereinafter, referred to as the "Mitsui Products"). The Mitsui Products are an irrigation system for plants that use several features disclosed as part of DTL's Confidential Information. The Mitsui Products are presently advertised on the website www.mitsuichem.com.

28. The Mitsui Products feature a "crop cultivation system" that "supplies liquefied nutrients through tubes to a special planting bed using the proprietary material", "iCALM™". Water, fertilizer, and pesticides are supplied through tubes to and retained

in "proprietary" planting bed, so that "crops can absorb nutrients and air as required (plant dependent growth factor delivery) resulting in optimal growth and quality."

29. Upon information and belief, the features described in above use the Confidential Information disclosed to Mitsui while under the NDA and used by Mitsui, for Mitsui's exclusive benefit, during the time period protected by the NDA.

30. Upon information and belief, the creation of these products is in direct violation of the agreements Mitsui signed with DTL.

31. In April 2013, MCI filed a foreign patent application, which listed Hirozumi Matsuno as an inventor, for an "invention to efficiently supply the elements necessary for plant growth to the plant cultivation materials,......and a container storing a liquid such as water. A nutrition solution and agrochemical products or a liquid supply tank storing a liquid such as water,...... in combination with tubing."......"and which have a liquid retentility and a liquid transitivity.......under which plants can absorb the amount of the elements necessary for the plant growth as much as plants want whenever plants want...". MCI's patent application in the United States was filed April 3, 2014 with a Publication Date of February 18, 2016.

32. Upon information and belief, this patent application is in direct violation of the NDA with DTL.

33. Injunctive and compensatory relief is necessary to remedy the harm caused by Defendants' violations.

### COUNT I
### MISAPPROPRIATION OF TRADE SECRETS

34. DTL realleges all allegations as set forth above in paragraphs 1-33 as if set forth herein.

35. This is an action against Mitsui for an injunction and damages based on violations of the NDA and/or Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 et seq. ("FUTSA").

36. DTL is the owner of the misappropriated Confidential Information.

37. The misappropriated Confidential Information constitutes "trade secrets" of DTL pursuant to Fla. Stat. § 688.002.

38. The misappropriated Confidential Information has independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

39. DTL has taken reasonable steps and efforts to maintain the secrecy of the misappropriated Confidential Information.

40. On information and belief, Mitsui has misappropriated the Confidential Information, all of which belongs to DTL, in direct violation of FUTSA, and is using a substantial portion of DTL's trade secrets to create an improvement or modification that is substantially derived from DTL's trade secrets.

41. On information and belief, Mitsui improperly used and disclosed DTL's trade secrets to others in the future, in violation of FUTSA and their agreements with DTL.

42. On information and belief, Mitsui knew or had reason to know that it acquired the Confidential Information based on its execution of the NDA and, therefore, under circumstances giving rise to a duty to maintain its secrecy.

43. Mitsui's misappropriation of DTL's Confidential Information was willful and malicious.

44. As a direct and proximate result of the above-described misappropriation of DTL's Confidential Information, Plaintiff has been damaged, for which it is entitled to compensatory, exemplary, and punitive damages as provided by Fla. Stat. § 688.004, attorneys' fees as provided by Fla. Stat. § 688.005, interest, costs, and any other relief deemed proper by the Court.

45. Unless continued to be restrained, Mitsui will continue to misappropriate and use DTL's Confidential Information to DTL's detriment. Accordingly, pursuant to Fla. Stat. § 688.003, Plaintiff is entitled to obtain immediate injunctive relief to enjoin Mitsui from its continued actual and/or threatened misappropriation of DTL's Confidential Information.

WHEREFORE, Plaintiff, DEVELOPMENTAL TECHNOLOGIES, LLC, hereby demands judgment against Defendants, MITSUI CHEMICALS, INC., and MITSUI CHEMICALS AMERICA, INC., for temporary and permanent injunctive relief, damages pursuant to, *inter alia*, Fla. Stat. § 688.001 et seq., attorneys' fees and costs and such further and additional relief as this cause and justice may require.

## *COUNT II*
## *MISAPPROPRIATION OF IDEA*

46. DTL realleges all allegations as set forth above in paragraphs 1 – 33 as if set forth herein.

47. DTL's Confidential Information and Eco-Ag product are novel.

48. DTL disclosed the Confidential Information and Eco-Ag to Mitsui in confidence.

49. On information and reasonable belief, Mitsui wrongfully adopted and used DTL's Confidential Information and Eco-Ag for its own financial gain.

50. Plaintiff is entitled to damages and equitable remedies, including injunctive relief, to enjoin Mitsui from its continued use of DTL's Confidential Information and ideas.

WHEREFORE, Plaintiff, DEVELOPMENTAL TECHNOLOGIES, LLC, hereby demands judgment against Defendants, MITSUI CHEMICALS, INC., and MITSUI CHEMICALS AMERICA, INC., for temporary and permanent injunctive relief, damages, attorneys' fees and costs and such further and additional relief as this cause and justice may require.

## COUNT III
## FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT (FDUTPA)

51. DTL realleges all of the allegations set forth above in paragraphs 1 – 33 as if set forth herein.

52. DTL and Mitsui were engaged in trade or commerce in Florida.

53. Mitsui, among other things, willfully and maliciously misappropriated DTL's Confidential Information and ideas.

54. Mitsui's actions constitute unfair or deceptive acts or practices or unconscionable acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, sections 501.201 through 501.213 of the Florida Statutes.

55. Had DTL been aware of Mitsui's intent to commit unfair or deceptive acts or practices or unconscionable acts or practices, DTL would not have disclosed its Confidential Information or ideas to Mitsui.

56. As a result of Mitsui's unfair or deceptive acts or practices or unconscionable acts or practices, DTL has sustained and continues to sustain substantial actual damages.

WHEREFORE, Plaintiff, DEVELOPMENTAL TECHNOLOGIES, LLC, hereby demands judgment against Defendants, MITSUI CHEMICALS, INC., and MITSUI CHEMICALS AMERICA, INC., for temporary and permanent injunctive relief, damages pursuant to, *inter alia*, Fla. Stat. § 501.201 et seq., attorneys' fees and costs and such further and additional relief as this cause and justice may require.

## COUNT IV
## UNFAIR COMPETITION

57. DTL realleges all of the allegations set forth above in paragraphs 1 – 33 as if set forth herein.

58. Mitsui's use of the Confidential Information to sell irrigation products in competition with DTL's irrigation products constitutes unfair competition pursuant to 15 U.S.C.§ 1125(a) and State and Federal common law.

59. Mitsui's unfair competition has caused and will continue to cause damage to DTL, and is causing irreparable harm to DTL for which there is no adequate remedy at law.

60. Mitsui has been unjustly enriched through its actions and should be disgorged of any unjust gains.

WHEREFORE, Plaintiff, DEVELOPMENTAL TECHNOLOGIES, LLC, hereby demands judgment against Defendants, MITSUI CHEMICALS, INC., and MITSUI CHEMICALS AMERICA, INC., for temporary and permanent injunctive relief, damages, attorneys' fees and costs and such further and additional relief as this cause and justice may require.

## *COUNT V*
## *BREACH OF CONTRACT*

61. DTL realleges all of the allegations set forth above in paragraphs 1 – 33 as if set forth herein.

62. DTL entered into the NDA with Mitsui. The NDA is a valid and enforceable contract. The confidentiality and non-use covenants and other provisions contained in the NDA are reasonably necessary to protect legitimate protectable interests in trade secrets, confidential information, customer relationships, work force, and goodwill.

63. DTL has fully performed all of its obligations under the NDA.

64. Mitsui is breaching and threatens to continue to breach the NDA by, without limitation:

    (a)    Continuing to offer for sale the Mitsui Products in violation of the NDA;

(b) Pursuit of Patent Application No. 14/782,009, PCT No. PCT/JP2014/059849: Published Feb. 18, 2016 - Pub. No. US 2016/0044880 A1;

(c) Disclosing to other third parties DTL's Confidential Information in violation of the NDA; and

(d) Otherwise utilizing DTL's Confidential Information in a manner for their benefit or to the detriment of DTL in violation of the NDA.

65. DTL has been damaged by Mitsui's breach of the NDA.

WHEREFORE, Plaintiff, DEVELOPMENTAL TECHNOLOGIES, LLC, hereby demands judgment against Defendants, MITSUI CHEMICALS, INC., and MITSUI CHEMICALS AMERICA, INC., for temporary and permanent injunctive relief, damages, attorneys' fees and costs and such further and additional relief as this cause and justice may require.

## *JURY DEMAND*

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 24, 2018　　　　Respectfully submitted,

TILDEN & PROHIDNEY, P.L.

By: /s/ Jesse M. Tilden
Jesse M. Tilden
FBN: 0550566
Michael J. Prohidney
FBN: 0905801
431 12th Street West, Ste. 204
Bradenton, FL 34205
Tel: 941-243-3959
Fax: 800-856-5332
eService:
  service@tildenprohidney.com
Attorneys for Plaintiff

DEVELOPMENTAL TECHNOLOGIES, LLC

Non-Disclosure and Non-Use Agreement

This **Non-Disclosure and Non-Use Agreement** (the "Agreement") is effective this 12th day of August, 2010 by and amongst the Parties:

> Mitsui Chemicals, Inc.
> Shiodome City Center
> 1-5-2 Higashi-Shimbashi
> Minato-ku, Tokyo 105-7117, Japan ("MCI")

and

> Mitsui Chemicals America, Inc.
> 800 Westchester Avenue, Suite N607
> Rye Brook, NY 10573 ("MCA")

(MCI and MCA shall collectively be referred to as "Potential New Purchaser" or "PNP")

and

> Developmental Technologies, LLC
> 6404 Manatee Avenue, Suite N.
> Bradenton, FL 34209 ("DTL")

(PNP and DTL shall be collectively referred to as the "Parties")

for the purpose of preventing the unauthorized disclosure and/or use of Confidential Information as defined below. The above referenced Parties, in consideration of the promises made herein, the terms and provisions of this Agreement, the mutual benefit to be gained by the performance hereof and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby agree to be bound by the terms below.

1. <u>Definition</u>. Subject to Paragraph 2 herein, for purposes of this agreement, "Confidential Information" of DTL shall include, but is not limited to, any and all business, technical, scientific, engineering, commercial, process, economic and financial information, trade secrets and material disclosed by or on behalf of DTL or its representatives to PNP or its representatives, either directly or indirectly, related to or in connection with the Fluid and Nutrient Delivery System and Methods of DTL ("System"); WIPO Patent Application WO/2008/103787 Kind Code A2; U. S. Patent No. 7,198,431 its continuation under Appl. 11/677,642 and its continuation under Appl. 11/930,304 and all formulations and derivatives thereof, applications therefore, processes for preparing same, its use, associated strategies, its application in the marketplace, sales and marketing plans, strategies, product designs, pending patents, customer lists, know-how, pricing and costing.

    Confidential information concerning the "System" and more specifically the technologies identified under the trade dress "Eco-Ag," disclosed by or on behalf of DTL or its representatives to PNP or its representatives, shall also include, but not limited to, information processes, procedures, new technologies and pending patents held or being worked on by DTL and related information

irrespective of its nature, (such as products, samples, data, notes, prototypes, diagrams, sketches, drawings, plans, photographs, formulas, studies, reports, specifications, projections, compilations, memoranda, analyses, documents, summaries, descriptions, strategies), their media (such as written, magnetic, electronic), and its means of communication (such as direct delivery, visual or oral presentations, long distance transmission), whether furnished or learned before or after the date hereof, together with all notes, memoranda, summaries, analyses, compilations and other writings relating thereto or based thereon prepared by the DTL or its representatives.

Confidential Information disclosed under this Agreement in tangible form shall be marked "Confidential" at the time of disclosure, or, if the initial disclosure is not in written or other tangible form, DTL shall make best efforts to confirm the fact and nature of Confidential Information at the time of disclosure. Such information disclosed in tangible form and reduced to written or other tangible forms are to be appropriately marked and submitted by the DTL to the PNP, as soon as reasonably practicable thereafter but no later than 30 days after disclosure; provided, however that the failure to do so shall not nullify the confidential nature of the disclosure. Failure of PNP to object to "Confidential" designation of information does not constitute a waiver of the right to object to this designation at a later time in conjunction with "Exclusions" (a), (b), (c), (d), or (e).

2. <u>Exclusions</u>. PNP's obligations under this Agreement do not extend to information that is:
   (a) publicly known at the time of disclosure or subsequently becomes publicly known through no fault of PNP; or
   (b) discovered or created by PNP before disclosure by DTL; or
   (c) learned by PNP through legitimate means other than from DTL or DTL's representatives; or
   (d) disclosed by PNP with DTL's prior written approval; or
   (e) ordered to be disclosed by a court of competent jurisdiction, subject to all defenses and objections of DTL it's representative's.

3. <u>Obligations of PNP</u>. Where PNP receives Confidential Information, it will hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of DTL. PNP shall carefully restrict access to Confidential Information to employees, and agents with a "need to know" and shall obligate those individuals to whom it gives access to Confidential Information to abide by the same restrictions and covenants as imposed upon the PNP herein. PNP shall not use for PNP's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their benefit or to the detriment of DTL, any Confidential Information other than the Purpose (herein after defined). DTL discloses information of or concerning its System including but not limited to its intellectual property, for the sole and limited purpose of identifying a buyer of its Eco-Ag solution ("Purpose").

PNP shall return to DTL any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information within ten (10) business days if DTL requests it in writing.

PNP hereby warrants and represents that it will not use the Confidential Information disclosed under this Agreement except for the purpose of determining PNP's interest in entering into a business transaction between the undersigned.

4. Time Periods. The nondisclosure provisions of this Agreement shall survive the termination of this Agreement and PNP's duty to hold Confidential Information in confidence shall remain in effect until the earlier of (a) Confidential Information no longer qualifies as a trade secret, or Confidential under Paragraph 2 herein, (b) DTL sends PNP written notice releasing PNP from this Agreement, or (c) the fifth anniversary of the Effective Date.

5. Relationships. Nothing contained in this Agreement shall be deemed to constitute either Party a partner, joint venturer or employee of the other Party for any purpose, nor shall it obligate the PNP to purchase the assets of DTL.

6. Severability. If a court finds any provision of this Agreement invalid or unenforceable, the remainder of this Agreement shall be interpreted so as best to effect the intent of the Parties.

7. Jurisdiction and Venue. This Agreement shall be governed by and construed in accordance with the laws for the State of Washington, DC, without regard to its choice of law provisions. The Parties hereby submit to the jurisdiction of the State and Federal courts of competent jurisdiction sitting in the State of Washington, DC.

8. Integration. This Agreement expresses the complete understanding of the Parties with respect to the subject matter and supersedes all prior proposals, agreements, representations and understandings. This Agreement may not be amended except in writing signed by all parties.

9. Ambiguity. No ambiguity in this Agreement shall be automatically interpreted against the drafter.

10. Waiver. The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

This Agreement and each Party's obligations hereunder shall be binding on the representatives, heirs, assigns and successors of such party. Each party has signed this Agreement through its authorized representative.

**Mitsui Chemicals, Inc.**

Signature: 那和保忍
(an individual with authority to bind the entity)

Print: Yasushi Nawa

Title: Executive Officer, General Manager New Business Development Division

Date: 2 Sep 2010

**Mitsui Chemicals America, Inc.**

Signature: _____
(an individual with authority to bind the entity)

Print: Naoto Tani

Title: President

Date: _____

**Developmental Technologies, LLC**

Signature: _____

Print: Ed Sinda

Title: Vice President/General Manager

Date: 9/17/10

Non-Disclosure and Non-Use Agreement
Page 3 of 3