UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEVELOPMENTAL TECHNOLOGIES, LLC,

    Plaintiff,

v.                                             Case No. 8:18-cv-1582-T-27TGW

MITSUI CHEMICALS, INC., a foreign
corporation, and MITSUI CHEMICALS
AMERICA, INC., a foreign corporation,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are (1) Defendant Mitsui Chemicals America, Inc.'s Motion to Dismiss the Amended Complaint and Motion to Strike the Demands for Injunctive Relief (Dkt. 37), and Plaintiff's response (Dkt. 40); (2) Plaintiff's Motion for Extension of Time to Serve Process and Extend Case Management and Scheduling Order (Dkt. 46), Defendant MCA's response (Dkt. 47), and Plaintiff's reply (Dkt. 49). Upon consideration, Defendant's Motion (Dkt. 37) is **GRANTED** *in part*. Plaintiff's Motion (Dkt. 46) is **GRANTED** *in part*.

**I.**    **Background**

Plaintiff, a research and development company, developed and patented an irrigation system, Eco-Ag, which delivers "water and nutrients to plant life using a mix of patented and proprietary methods." (Dkt. 21 at ¶¶8, 11). Mitsui Chemicals, Inc. ("MCI"), a Japanese corporation, "develops chemical products and technologies." (Dkt. 37 at p. 5). Mitsui Chemicals America, Inc. ("MCA") is a Delaware corporation with its principal place of business in Delaware. MCA is a wholly owned subsidiary of MCI. (Dkt. 21 at ¶3; Dkt. 37 at p. 5).

In 2010, Plaintiff and MCI began communicating about MCI's possible acquisition of Plaintiff's irrigation product systems, including the Eco-Ag system. (Dkt. 21 at ¶¶15-16). After initial talks were conducted, MCI informed Plaintiff that it would be visiting Plaintiff's facilities

1

with a member of MCA to inspect the irrigation systems. (Id. ¶21). Shortly thereafter, MCI and MCA "entered into a Non-Disclosure and Non-Use Agreement" ("NDA") with Plaintiff, which "established guidelines for the use and disclosure of confidential and proprietary information that would be disclosed . . . ." (Id. ¶¶27-28). After executing the NDA, representatives from both MCI and MCA visited Plaintiff's facility in Bradenton, Florida. (Id. ¶29). During and after this visit, Plaintiff disclosed confidential information relating to the Eco-Ag product to both MCI and MCA. (Id. ¶33). An agreement for MCI and MCA to purchase the Eco-Ag system never materialized and Plaintiff alleges that MCI is currently marketing two crop irrigation products that "use the Confidential Information disclosed to [Defendants] while under the NDA . . ." (Id. ¶¶40-41, 44) and that MCI filed a foreign patent application "in direct violation of the NDA." (Id. ¶¶46, 48).

In the seventeen count Amended Complaint, Plaintiff brings this action against Defendants MCI and MCA for conspiracy to misappropriate trade secrets (Count I); the misappropriation of trade secrets in violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.* ("FUTSA"), and D.C. Code § 36-401 *et seq.* ("UTSA") (Counts II and III); conspiracy to misappropriate an idea (Count IV); the misappropriation of idea (Counts V and VI); conspiracy to violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213 ("FDUTPA") (Count VII); violations of FDUTPA (Counts VIII and IX); conspiracy to engage in unfair competition (Count X); violations of unfair competition (Counts XI and XII); breach of contract (Counts XIII and XIV); conspiracy to commit fraudulent inducement (Count XV); and fraudulent inducement (Counts XVI and XVII). (Dkt. 21, at pp. 12-33).[1]

Defendant MCA moves to dismiss on several grounds, including failure to state a claim, and that certain counts are either preempted by FUTSA, precluded under Florida's independent tort doctrine, or barred by the intra-corporate conspiracy doctrine. Defendant further moves to strike Plaintiff's demands for injunctive relief.

---

[1] Defendant MCI has yet to be served with the Amended Complaint and therefore this Order will be limited to those claims brought against Defendant MCA.

## II. Standard

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court's scope of review on a motion to dismiss must be limited to the four corners of the complaint. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

"The complaint must contain enough facts to make a claim for relief plausible on its face." *Resnick*, 693 F.3d at 1324-25. This occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Therefore, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. In each instance, this determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal citation omitted).

Although it is axiomatic that the allegations of the Amended Complaint must be accepted for purposes of Defendant's motion, this is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at

678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. And all reasonable inferences must be drawn in Plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

**III. Discussion**

*A. Counts I and III - Misappropriation of Trade Secrets*

Defendant moves to dismiss Plaintiff's conspiracy to misappropriate trade secrets claim (Count I) and the misappropriation of trade secrets claim (Count III), arguing that Plaintiff fails to state either claim with reasonable particularity under the Florida Uniform Trade Secrets Act. (Dkt. 37 at p. 2). Specifically, Defendant contends that Plaintiff "lists only broad categories of purportedly confidential information rather than specifying the alleged trade secrets at issue." (Id.). Plaintiff responds that it "sufficiently alleges the system disclosed to MCA, how the system works, the research data provided to MCA, and the market analysis conducted by [Plaintiff]" and that "[s]hortly thereafter, MCA began producing its own system substantially similar to [Plaintiff's]." (Dkt. 40 at p. 8). Plaintiff contends that its "description of its trade secrets is sufficient to place MCA on notice of the claims against it." (Id. at p. 9).

To state a claim for misappropriation of trade secrets under the Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001 *et seq.*, a plaintiff must allege (1) they possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret it possessed was misappropriated,[2]

---

[2] "Misappropriation" of a trade secret is defined as:

    (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

    1. Used improper means to acquire knowledge of the trade secret; or

    2. At the time of disclosure or use, knew or had reason to know that her or his

4

either by one who knew or had reason to know that the secret was improperly obtained or by one who had used improper means to obtain it. *See* Fla. Stat. § 688.002; *Audiology Distrib., LLC v. Simmons*, No. 8-12-cv-02427, 2014 WL 12620835, at *1 (M.D. Fla. Jan. 8, 2014). And while a "plaintiff is required to identify with reasonable particularity the trade secrets at issue before proceeding with discovery . . . to satisfy this requirement *at the dismissal stage in federal court*, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) (per curiam) (emphasis added).

Plaintiff alleges that it possessed secret information in the form of "Confidential Information" and took "reasonable steps and efforts" to protect its secrecy. (Dkt. 21 at ¶¶53-57, 78-81). The Amended Complaint identifies several categories of confidential and proprietary information disclosed to MCA, including "photographs of active tests and system configurations" and visual demonstrations of "root biopsies" and the "correlation and relationship of the plant's root structure to the Eco-Ag tubing." (Id. ¶¶29-30). The Amended Complaint further alleges that the secret

---

knowledge of the trade secret was:

a. Derived from or through a person who had utilized improper means to acquire it;

b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Fla. Stat. § 688.002(2).

information was misappropriated by MCA, who knew the information was secret. (Id. ¶¶58, 60, 82, 84). These allegations sufficiently state a claim for misappropriation of trade secrets. *See DynCorp Int'l*, 664 F. App'x at 848.

Defendant argues that the misappropriation claims should be dismissed because Plaintiff's claimed trade secrets are not actually secret as Plaintiff holds a patent that publicly describes in detail its irrigation technology. (Dkt. 37 at p. 9).[3] This argument does not alter the conclusion that a claim for misappropriation has been properly pled. *See Innovative Strategic Commc'ns, LLC v. Viropharma, Inc.*, No. 8:11-cv-1838, 2012 WL 3156587, at *13 (M.D. Fla. Aug. 3, 2012) (denying motion to dismiss where Plaintiff described the misappropriated trade secrets as "information, formulas, patterns, compilations, programs, devices, methods, techniques, seminar lists, customer lists, promotional material, [and] processes") (citation omitted). Whether the trade secrets alleged to have been misappropriated are actually secret is a matter for the finder of fact. *See Godwin Pumps of Am., Inc. v. Ramer*, No. 8:11-cv-580, 2012 WL 1110068, at *7 (M.D. Fla. Apr. 3, 2012) ("Courts hesitate to grant summary judgment when faced with the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable protective steps. . . . Generally, such determinations should be resolved by a fact finder after both sides have fully presented their evidence.").

---

[3] Defendant MCA filed a "Request for Judicial Notice" (Dkt. 35) requesting judicial notice be taken of a patent referenced in the Amended Complaint and certain court records pertaining to another Middle District of Florida case involving Plaintiff. (Dkt. 37). Although courts may consider matters that are judicially noticeable or of public record in resolving 12(b)(6) motions to dismiss without converting them to motions for summary judgment, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), the patent relates to the substantive merits of whether Defendants misappropriated Plaintiff's trade secrets. As explained *infra*, this is a matter more appropriate for fact discovery and summary judgment. As to the court records, such materials are neither authoritative nor persuasive. For these reasons, the request for judicial notice at this stage is denied. *See Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) ("[A] court has wide discretion to take judicial notice of facts.").

### B. *Counts IV, VI, VII, and IX - Misappropriation of Idea and FDUTPA*

Defendant moves to dismiss Plaintiff's claims that are predicated on misappropriation of idea (Counts IV and VI) and those alleging violations of the Florida Deceptive and Unfair Trade Practices Act (Counts VII and IX), arguing that these causes of action are preempted by FUTSA because each claim "relies on the same conduct as the FUTSA claims . . .." (Dkt. 37 at p. 3).

The provisions of FUTSA "displace conflicting tort, restitutory, and other law[s] of [Florida] providing civil remedies for misappropriation of a trade secret." § 688.008(1). In other words, "other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." *See New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007) (citing *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180-81 (M.D. Fla. 2005)). However, FUTSA does not preempt contractual remedies (whether or not they are based upon misappropriation of a trade secret) or other civil remedies that are "not based upon misappropriation of a trade secret." Fla. Stat. § 688.008(2). And if there are "material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim," then the additional torts are not preempted. *New Lenox*, 510 F. Supp. 2d at 908 (citing *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335-36 (S.D. Fla. 2002)).

Plaintiff's misappropriation of idea claim is not preempted by FUTSA if the allegations supporting the claim are separate and distinct from the misappropriation of trade secret claim brought in Counts I and III. *See Am. Honda Motor Co.*, 390 F. Supp. 2d at 1181.

#### *i. Misappropriation of Idea*

Plaintiff's claims for misappropriation of idea are not materially distinct from its misappropriation of trade secrets claims. The underlying factual allegations pertaining to both causes

7

of action arose in connection with Plaintiff's disclosure of its "Confidential Information" and Defendant's subsequent use of this information in violation of the NDA. *See* (Dkt. 21 at ¶83 ("MCA improperly used . . . [Plaintiff's] trade secrets . . . in violation of law and their agreements")); *cf.* (Id. ¶102 ("MCA wrongfully adopted and used [Plaintiff's] Confidential Information and the Eco-Ag system for its own financial gain.")). Accordingly, Counts IV and VI are preempted by FUTSA. *New Lenox*, 510 F. Supp. 2d at 908.

### *ii. Florida Deceptive and Unfair Trade Practices Act*

Plaintiff's FDUTPA claim is not preempted if the allegations are separate and distinct from Counts I and III. Defendant's contention that they are not is well taken. The underlying factual allegations that pertain to Plaintiff's FDUTPA claim involve the disclosure of trade secrets subsequent to the parties' execution of their NDA. *See e.g.* (Dkt. 21 at ¶134 ("MCA, willfully and maliciously misappropriated [Plaintiff's] confidential and proprietary concepts, data, models, and technology.")). These allegations underpin Plaintiff's misappropriation of trade secret claims (Id. ¶82) and are therefore preempted by FUTSA. *New Lenox*, 510 F. Supp. 2d at 908.

### C.  *Counts X and XII - Unfair Competition*

Defendant moves to dismiss Plaintiff's claims that relate to MCA engaging in unfair competition (Counts X and XII), arguing that Plaintiff fails to allege sufficient facts to make its claim plausible. Plaintiff responds that Counts X and XII sufficiently allege a cause of action under § 1125(a) and that it "has properly alleged at least a 'false advertising' claim under § 1125(a)(1)(b)." (Dkt. 40 at p. 10).[4] Notwithstanding these arguments, the unfair competition claims possess the

---

[4] To support its contention that Counts X and XII were sufficiently alleged, Plaintiff refers to ¶41 of the Amended Complaint. (Dkt. 40 at p. 10). However, this allegation was specifically excluded from the allegations relied on by Plaintiff in pleading Counts X (Dkt. 21 at ¶138) and Count XII (Id. ¶153).

characteristics of a shotgun pleading in that they are "framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts." *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (citation omitted). Specifically, both Counts include the following allegation:

> Mitsui's use of the Confidential Information to sell irrigation products in competition with [Plaintiff's] irrigation products constitutes unfair competition pursuant to *15 U.S.C. § 1125(a) and State and Federal law*.

(Dkt. 21 at ¶¶144, 158) (emphasis added). Because these allegations cite generally to state law, federal law, and the Lanham Act (15 U.S.C. § 1125(a)), it is unclear on what theories, under Federal law or state law, Plaintiff intends to proceed. *See Cesnick*, 88 F.3d at 905. Moreover, Counts X and XII lump the Defendants together without factual allegations directed to misconduct of MCA. *See Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006), *aff'd sub nom. Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675 (11th Cir. 2009).

Notwithstanding Plaintiff's attempt to clarify in its response that its unfair competition claims relate to both subsections of the Lanham Act, the Amended Complaint does not give MCA fair notice of the claims against it. And because Counts X and XII do not comply with Rule 8, Fed.R.Civ.P., these claims will be dismissed.

### D. Count XIV - Breach of Contract

Defendant moves to dismiss Plaintiff's breach of contract claim (Count XIV) for failing to state a claim.[5] Defendant contends that Plaintiff fails to allege conduct making the claim plausible, offering only conclusory allegations of the elements of the cause of action. (Dkt. 37 at p. 4).

---

[5] This claim alleges breach of the NDA. (Dkt 21. at ¶169).

The NDA is "governed by and construed in accordance with the laws for the State of [sic] Washington, DC, without regard to its choice of law provisions." (Dkt. 21-1 at p. 7). Under Washington D.C. law, to state a claim for breach of contract, Plaintiff must allege "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

Plaintiff alleges that MCA breached the NDA by continuing to offer for sale certain products, pursuing certain patent applications, disclosing the Confidential Information to third parties, and using Plaintiff's Confidential Information for their benefit or to Plaintiff's detriment. (Dkt. 21 at ¶169(a)-(d)). Contrary to Defendant's contentions, Count XIV satisfies the liberal pleading requirements of Rule 8(a). When taken as true, as they must for purposes of the motion to dismiss, the allegations "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. And to the extent Defendant argues that Plaintiff's allegations of breach are directed more to conduct of MCI, (Dkt. 37 at pp. 18-19) ("[Plaintiff] offers no factual allegations to contradict its earlier allegations that link . . . only to MCI"; "[Plaintiff] fails to offer facts to suggest that MCA had any role in the pursuit of MCI's patent application"), those arguments are more appropriate for the summary judgment stage. Dismissal for failure to state a claim, therefore, is not appropriate. *See Twombly*, 550 U.S. at 555 (to survive a motion to dismiss for failure to state a claim, plaintiff need only provide sufficient factual allegations, which, taken as true, "raise a right to relief above the speculative level").

## E.  Counts XV and XVII - Fraudulent Inducement

Defendant moves to dismiss Plaintiff's fraudulent inducement claims (Counts XV and XVII), arguing that they are duplicative of Plaintiff's breach of contract claim and therefore precluded under Florida's independent tort doctrine.[6] Plaintiff does not expressly respond to this argument. These claims are therefore deemed abandoned and will be dismissed. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").[7] Notwithstanding, these claims are subject to dismissal under the independent tort doctrine.

The elements of a fraud in the inducement claim are: (1) a false statement of fact, (2) known by the defendant to be false when it was made, (3) made to induce reliance, (4) action in reliance of the false statement, and (5) resulting damages. *Noack v. Blue Cross & Blue Shield of Florida, Inc.*, 742 So. 2d 433, 434 (Fla. 1st DCA 1999); *Wynfield Inns v. Edward LeRoux Grp., Inc.*, 896 F.2d 483, 490-91 (11th Cir. 1990).

Under the independent tort doctrine, a plaintiff bringing a claim for fraudulent inducement must demonstrate that the tortious conduct is independent of the performance of the contract. *See Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017). Specifically, the fraud claim must include allegations "beyond and independent of" the performance of the contract.

---

[6] In the alternative, Defendant contends the claims are preempted by FUTSA. (Dkt. 37 at p. 4). And, Defendant argues that each claim fails to satisfy the heightened pleading requirement for fraud-based claims. (Id.). Plaintiff does not oppose Defendant's contentions, except for a general statement in its opposition that "Counts . . . XV and XVII are not preempted by FUTSA." (Dkt. 40 at p. 13).

[7] *See also Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012) ("If a party hopes to preserve a claim, argument, theory, or defense on appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.").

11

*See Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014). "In assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract." *Id.* at *5.

Plaintiff's fraudulent inducement claims fail to allege conduct "beyond and independent of" MCA's performance of the NDA. While Plaintiff alleges that Defendant falsely represented "their interest in purchasing the Eco-Ag technology" and that it "relied upon MCA's representations, including that it would abide by the terms of the NDA . . . ." (Dkt. 21 at ¶¶172,175,184, 187), these allegations are not independent of MCA's performance of the NDA, but rather wholly dependent on MCA's claim of breach. *See Kaye*, 2014 WL 2215770, at *4 ("claims of fraud are precisely the same as a potential breach-of-contract claim"). Plaintiff fails to allege an independent claim of fraudulent inducement against MCA.

### F. Counts I, IV, VII, X, XV - Civil Conspiracy

Defendant moves to dismiss each of Plaintiff's conspiracy claims, arguing that the claims are barred by the intra-corporate conspiracy doctrine.[8] Plaintiff does not address this argument. *See Sapuppo*, 739 F.3d at 681. Plaintiff alleges in several counts that a conspiracy existed between MCI and MCA, but also alleges that MCA "is a wholly owned subsidiary of MCI." (Dkt. 21 at ¶3). The intra-corporate conspiracy doctrine bars Counts I, IV, VII, X, and XV. *See Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, No. 6:14-CV-533, 2014 WL 3747667, at *4 (M.D. Fla. July 29, 2014).

---

[8] Under Florida law, a civil conspiracy requires (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the commission of an overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result. *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So.3d 855, 863 (Fla. 4th DCA 2012) (citation omitted).

Under the intra-corporate conspiracy doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). This doctrine has been applied in the context of a subsidiary/parent corporate conspiracy under the Sherman Act. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) (parent corporation and its wholly-owned subsidiary were not legally capable of conspiring with each other in a section 1 Sherman Act case). And although, the Eleventh Circuit has declined to extend the doctrine in a civil RICO case, *see Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323, 1327 (11th Cir. 2004), it has applied the doctrine in a non-antitrust case. *See Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767-70 (11th Cir. 2000) (intra-corporate conspiracy doctrine barred plaintiff's civil rights conspiracy claim). Indeed, courts in this Circuit have extended the doctrine to other causes of action as well.[9] *See Advantor*, 2014 WL 3747667, at *4 (citing *Copperweld* and applying the intra-corporate conspiracy doctrine to a tortious interference and breach of contract claim).

### G. *Injunctive Relief*

Defendant moves to strike Plaintiff's demands for injunctive relief, arguing that Plaintiff cannot establish that it will suffer future harm. (Dkt. 37 at p. 24). Plaintiff opposes only those demands for injunctive relief in its claims brought under the FUTSA. Defendant's contentions

---

[9] *See also Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*, No. 17-CV-22462, 2018 WL 7287192, at *12 (S.D. Fla. Jan. 31, 2018) (finding that "there can be no conspiracy between a parent company and its wholly owned subsidiary" where Defendants allegedly "conspired to 'fraudulently induce [Plaintiff] to disclose vital confidential business information'"; *Exportadora Atlantico, S.A. v. Fresh Quest, Inc.*, No. 16-CV-23112, 2017 WL 7792710, at *7 (S.D. Fla. Feb. 21, 2017) (intra-corporate conspiracy doctrine barred plaintiff's claim for conspiracy to defraud); *Rossi v. Darden*, No. 16-21199-CIV, 2016 WL 11501449, at *8 (S.D. Fla. July 19, 2016) (holding that a wholly-owned subsidiary was not a separate legal entity for the purpose of the intra-corporate conspiracy doctrine in a misappropriation of trade secrets case).

regarding the demands for injunctive relief not addressed by Plaintiff are deemed unopposed and are **STRICKEN**.

As to the demand for injunctive relief relating to Plaintiff's FUTSA claim, a request to strike this demand for injunctive relief at this stage is premature, since Plaintiff will be granted leave to amend. *See Meier v. Provima, Inc.*, No. 8:06-CV-336, 2006 WL 3876371, at *2 (M.D. Fla. May 11, 2006) (finding defendants' argument to strike demands for injunctive relief premature).

### IV. Plaintiff's Motion for Extension of Time to Serve Process on MCI

As stated *supra*, Plaintiff failed to serve MCI with the operative complaint. Plaintiff moves for a six (6) month extension to effectuate service of process upon MCI due to the "logistical hurdles of serving a Japanese company through the Hague Convention." (Dkt. 46 at p. 5). In support of its contention, Plaintiff submits the Declaration of Michael J. Prohidney (Dkt. 49-1). Prohidney avers that he represents Plaintiff and upon conferring with a process serving corporation, Ancillary Legal Corporation, is informed that "it would take approximately six months to effectuate service of process upon MCI in Japan." (Id. ¶¶1, 3). Prohidney further provides the tracking information related to the state court complaint, which shows that it took approximately four months for process to be served once translation of the complaint into Japanese was completed. (Id. ¶¶5-10).

MCA opposes any extension to serve MCI with process or modification to the Case Management and Scheduling Order and cites to *Harris v. Orange S.A.*, 636 F. App'x 476 (11th Cir. 2015) for the proposition that Plaintiff has failed to show that it exercised due diligence in attempting to serve MCI. (Dkt. 47 at p. 1).

A plaintiff typically must serve process on a defendant within 120-days after a complaint is filed. *See* Fed.R.Civ.P. 4(m). "That time limit does not apply, however, when a plaintiff is attempting

14

to serve an individual in a foreign country." *Harris*, 636 F. App'x at 485. And if a plaintiff fails to exercise diligence in attempting to effectuate service upon a foreign defendant, the case may be dismissed." *Id.* at 485-86. *See Lepone-Dempsey v. Carroll Cty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007) ("the district court has the discretion to extend the time for service of process") (citation omitted). One factor to be considered in determining whether to extend time for service of process, is "if the applicable statute of limitations would bar the refiled action." *Id.* (citation omitted).

The interest of justice warrants a reasonable extension of time for service to be effected on MCI. The Declaration provided in Plaintiff's Reply details a level of due diligence distinguishable from that of the plaintiff in *Harris*. *See Harris*, 636 F. App'x at 486 ("[Plaintiff] admits that she made no effort to serve the foreign defendants"). And, Plaintiff's contention that the statue of limitations on its misappropriation of trade secret claim may bar a subsequent suit against MCI supports granting an extension. *See Lepone-Dempsey*, 476 F.3d at 1282. However, Plaintiff's request for a six (6) month extension is excessive. Plaintiff is granted a four (4) month extension to serve MCI with its operative complaint. *See* Section V, *infra*.

V.     **Conclusion**

Accordingly, consistent with this order, Defendant Mitsui Chemicals America, Inc.'s Motion to Dismiss the Amended Complaint and Motion to Strike the Demands for Injunctive Relief is **GRANTED** *in part*. Counts I, IV, VI, VII, IX, X, XII, XV, XII are **DISMISSED**. Plaintiff is granted leave to file a second amended complaint within **twenty (20) days** of the date of this Order or file a notice of its election not to amend.[10] Plaintiff has four-months to serve the operative complaint

---

[10] In this Circuit, "a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985).

upon MCI. Plaintiff's request to amend the Case Management and Scheduling Order (Dkt. 46) is **DEFERRED** pending the filing of a second amended complaint.

**DONE AND ORDERED** this 15th day of April, 2019.

/s/ Whittemore
JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record